**2017 UT App 77**

## THE UTAH COURT OF APPEALS

ANDREW VEYSEY,
Appellee,
*v.*
ALEXIS NELSON,
Appellant.

Opinion
No. 20150609-CA
Filed May 4, 2017

Third District Court, Salt Lake Department
The Honorable Barry G. Lawrence
No. 984907587

Troy L. Booher and Beth E. Kennedy,[1] Attorneys
for Appellant

Jenna Hatch, Attorney for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGE STEPHEN L. ROTH concurred. JUDGE J. FREDERIC
VOROS JR. concurred in the result, with opinion.

ORME, Judge:

¶1     Alexis Nelson (Mother), formerly known as Alexis Veysey, appeals the district court's order denying her claim for daycare-expense arrearages. We affirm.

¶2     In 2013, Mother sought reimbursement from Andrew Veysey (Father) for daycare expenses that she incurred between

---

1. Alexandra Mareschal, a law school graduate who had not yet been admitted to the Utah Bar, presented oral argument on behalf of Appellant under rule 14-807 of the Utah Rules of Judicial Administration. *See* Utah R. Jud. Admin. 14-807(d)(3)(F).

2002—over a decade earlier—and 2006. The commissioner denied her claim in substantial part, holding that laches and the applicable statute of limitations precluded the recovery of daycare expenses incurred before 2005. Mother filed an objection with the district court, which conducted an evidentiary hearing and approved the commissioner's order.

¶3 Mother appealed, and we vacated the order and remanded for additional findings of fact and conclusions of law. *See Veysey v. Veysey*, 2014 UT App 264, ¶ 21, 339 P.3d 131. In that prior appeal, we concluded that "variable daycare expenses constitute[d] child support" and that the statute of limitations did "not preclude Mother from seeking reimbursement for the pre-2005 daycare expenses."[2] *Id.* ¶ 15. We noted, however, that if supported by adequate factual findings, laches could equitably preclude the recovery of daycare expenses that were legally recoverable under the statute of limitations. *See id.* ¶ 18.

¶4 On remand, the district court held that laches barred most of Mother's reimbursement claims. Mother, a lawyer, then filed a motion to alter or amend the judgment, claiming that Utah law prohibits the application of laches when an action is timely under the applicable statute of limitations. The district court denied that motion. Mother appeals.

¶5 Mother raises two arguments. First, she argues that the district court erroneously applied the doctrine of laches. Whether laches applies is a question of law, which we review for

---

2. *See* Utah Code Ann. § 78B-5-202(6)(a)(i) (LexisNexis Supp. 2016) (providing that "[a] child support order . . . may be enforced . . . within four years after the date the youngest child reaches majority"). Although this statute has been amended, the changes are inconsequential in the context of this case. Therefore, for ease of reference, we cite its most recent codification.

correctness.[3] *See Johnson v. Johnson*, 2014 UT 21, ¶ 8 & n.11, 330 P.3d 704. Second, Mother claims that the district court erred by concluding that she unreasonably delayed her action and that her delay prejudiced Father. The application of laches to a particular set of facts and circumstances "presents a mixed question of law and fact." *See id.* ¶ 8. Within that framework, "we review the trial court's conclusions of law for correctness" and "will disturb [its] findings of fact only if they are clearly erroneous." *Matthews v. Galetka*, 958 P.2d 949, 950 (Utah Ct. App. 1998). Although "we typically grant some level of deference to the trial court's application of law to the facts," *Wayment v. Howard*, 2006 UT 56, ¶ 9, 144 P.3d 1147, the court's determination must be supported by adequate factual findings, *see Anderson v. Thompson*, 2008 UT App 3, ¶ 42, 176 P.3d 464.

¶6 Mother argues that "Utah law precludes laches as a defense to court-ordered child support, including variable daycare expenses." Specifically, she asserts that the Utah Supreme Court has "rejected the application of laches as a defense to legal claims."

¶7 In support of her assertion, Mother cites *DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835 (Utah 1996), where the Utah Supreme Court stated that when "the plaintiff's claims are based in law, the statute of limitations, not the doctrine of laches, governs the timing surrounding a plaintiff's filing of a complaint." *Id.* at 845. But *DOIT* failed to note that Utah has "abolished any formal distinction between law and equity," *Borland v. Chandler*, 733 P.2d 144, 146 (Utah 1987), and in support of the proposition Mother cites, *DOIT* relied on United States Supreme Court authority that predates the Federal Rules of Civil

---

3. By focusing on laches, we adhere to the analytical framework employed in our prior opinion and the law of the case established there and relied upon by the district court on remand. In so doing, we do not reject the alternative route to affirmance explained by Judge Voros in his separate opinion.

Procedure, *see DOIT*, 926 P.2d at 845. With the adoption of the Federal Rules of Civil Procedure in 1938, however, the distinction between law and equity was abolished in the federal courts. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472 n.5 (1962). *See also Borland*, 733 P.2d at 146 (noting that "[i]t is well established that equitable defenses may be applied in actions at law and that principles of equity apply wherever necessary to prevent injustice"). And in the years following *DOIT*, the Utah Supreme Court has specifically held that "[t]he doctrine of laches may apply in equity, whether or not a statute of limitation also applies and whether or not an applicable statute of limitation has been satisfied." *Insight Assets, Inc. v. Farias*, 2013 UT 47, ¶ 18, 321 P.3d 1021 (alteration in original) (citation and internal quotation marks omitted). Accordingly, because laches may apply in situations where the statute of limitations has not yet run, the existence of a statute of limitations does not, as Mother suggests, automatically preclude application of the laches doctrine.[4]

¶8    Mother also contends that her delay was reasonable and that it did not prejudice Father. The laches doctrine "is founded upon considerations of time and injury." *Id.* ¶ 17 (citation and internal quotation marks omitted). "To successfully assert a laches defense, a defendant must establish both that the plaintiff unreasonably delayed in bringing an action and that the defendant was prejudiced by that delay." *Borland*, 733 P.2d at 147.

¶9    In regard to unreasonable delay, Mother claims that her action was reasonable because it was timely under the applicable statute of limitations. *See* Utah Code Ann. § 78B-5-202(6)(a)(i)

---

4. We also reject Mother's contention that the application of an equitable defense to a legal claim violates the separation of powers doctrine. *Cf. Miller v. French*, 530 U.S. 327, 340 (2000) ("[W]e should not construe a statute to displace courts' traditional equitable authority absent the 'clearest command' or an 'inescapable inference' to the contrary[.]") (citations omitted).

(LexisNexis Supp. 2016). Relying on *Lee v. Gaufin*, 867 P.2d 572 (Utah 1993), Mother insists that any action consistent with the applicable statute of limitations is "reasonable per se." *See id.* at 576 (stating that statutes of limitations "necessarily allow a reasonable time in which to file a lawsuit") (citation and internal quotation marks omitted).

¶10 We have largely dispelled this notion. *See supra* ¶ 7. Additionally, as the district court noted, Mother waited more than a decade to seek reimbursement for some of the daycare expenses, yet Utah law required Mother to notify Father of changes in child care providers and expenses within thirty days. *See* Utah Code Ann. § 78B-12-214(2)(b)(ii) (LexisNexis 2012) ("In the absence of a court order to the contrary, the parent shall notify the other parent of any change of child care provider or the monthly expense of child care within 30 calendar days of the date of the change."). And although Father knew about the change in daycare providers, there is nothing in the record that indicates he was aware of any change in his financial obligations relative to daycare expenses. Because the district court found that Mother did not have a justifiable explanation for her delay, and because it supported its conclusion with adequate findings, it did not err when it held that her delay was unreasonable.

¶11 Mother also claims that her delay did not prejudice Father. She points out that "[l]aches is designed to shelter a prejudiced defendant from the difficulties of litigating meritorious claims after an unexplained delay." *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 2012 UT 66, ¶ 37, 289 P.3d 502. Thus, Mother argues, there was no prejudice to Father because her delay did not cause any difficulty in demonstrating the amount owed.[5]

---

5. In relation to this argument, Mother asserts that the district court clearly erred by barring the recovery of daycare expenses before April 2005 but allowing their recovery thereafter.

(continued…)

¶12 But the district court made several findings to the contrary. Specifically, the district court found that the passage of time "contributed to [Mother]'s inability to properly and reasonably support the amount of her claims" and that the methodology she used in calculating those claims was confusing. For example, the district court pointed to Mother's payment summary. The summary included only credit card payments that she made directly to the daycare provider, which was the children's private school. As a result, the ledger did not clearly allocate expenses between basic tuition and after-school care, nor did it reflect any adjustment to distinguish between basic child care and enrichment programs. Likewise, it did not account for any cash payments Father might have made after 2002.[6]

¶13 Additionally, and contrary to what Mother suggests, showing a lack of prejudice involves demonstrating more than a mere ability to approximate the amount Father owes. Based on its finding that Father was never informed of the increased daycare expense, the district court held that Father was prejudiced because he never had the opportunity to object or to collaborate with Mother to find a less expensive daycare provider. Indeed, Father might well have assumed, in the absence of timely notice of an increase in daycare expenses, that the shift in daycare provider did not entail an increase in

---

(…continued)
According to Mother, no facts in the record "support the apparently arbitrary cutoff date." But Father has expressly acknowledged—below and on appeal—that he is not challenging the recovery of expenses after that date. Accordingly, there is no dispute as to those amounts, and we have no occasion to discuss this contention further.

6. While Mother disputed this contention, Father insisted he might have made some payments in cash, which possibility the district court deemed impossible to confirm or dispel because of the passage of time.

expense worth mentioning. In sum, we conclude that the district court supported its conclusion with adequate findings and therefore did not err in concluding that Mother's unreasonable delay prejudiced Father.

¶14 In our previous opinion, we recognized that laches could be a viable defense, if supported with appropriate findings of fact. Such findings were made here.[7] The district court provided adequate findings that support its conclusion that Mother unreasonably delayed her action to recover amounts that allegedly became due many years ago and that her delay prejudiced Father. Accordingly, the district court did not erroneously apply the doctrine of laches to Mother's claim for reimbursement of daycare expenses.

¶15 Affirmed.

————

VOROS, Judge (concurring in the result):

¶16 I concur in the judgment of the court but on an alternative ground. *See Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 ("[A]n appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record . . . ." (citation and internal quotation marks omitted)). I would affirm on the ground that Mother's claim is barred by section 78B-12-214 of the Utah Code.

¶17 Section 214 provides, "In the absence of a court order to the contrary, the parent [who incurs childcare expenses] shall notify the other parent of any change of child care provider or

---

7. The district court's thoughtful and systematic findings of fact and conclusions of law are appreciated. The "redline" style that the court used in amending the order Mother proposed made it easy for us to discern what the court actually found as opposed to what the drafting party hoped it would find.

the monthly expense of child care within 30 calendar days of the date of the change." Utah Code Ann. § 78B-12-214(2)(b)(ii) (LexisNexis 2012). A parent who fails to comply with this requirement "may be denied the right . . . to recover the other parent's share of the expenses." *Id.* § 78B-12-214(3).

¶18    The district court found that "there was nothing presented to the Court indicating that any increased child care expense was ever communicated" to Father. Mother thus did not, to paraphrase section 214, notify Father of the change in the monthly expense of child care within 30 calendar days of the date of the change. This failure to notify satisfies section 214's factual predicate. In addition, the court determined that Mother should be denied the right to recover Father's share of expenses incurred before April 2005. Therefore, although the district court found section 214 persuasive rather than dispositive, I would affirm its judgment under that section.

¶19    This resolution of the appeal is, I believe, the most straightforward and analytically sound. For example, it would allow us to sidestep the analysis required by *F.M.A. Financial Corp. v. Build, Inc.*, 404 P.2d 670, 672 (Utah 1965), referring to "the practically invariable rule that laches cannot be a defense before the statutory limitation has expired," and *Insight Assets, Inc. v. Farias*, 2013 UT 47, ¶ 18, 321 P.3d 1021, holding that "that rule is not absolute." In addition, it is not crystal clear to me that *Insight Assets* permits application of the doctrine of laches in this case; that opinion states that "[t]he doctrine of laches may apply *in equity*, whether or not a statute of limitation also applies and whether or not an applicable statute of limitation has been satisfied." *Id.* (alteration in original) (emphasis added) (citation and internal quotation marks omitted). The emphasized language requires us, I believe, to resolve whether the district court here applied the doctrine of laches "in equity." I am not confident that it did. But I am confident that section 214 authorized the district court's judgment. I would therefore affirm on that ground.

————